### THE CINCINNATI, HAMILTON AND DAYTON R. R. CO. v. HENRY CRISS.

1. NEGLIGENCE OF RAILROAD COMPANY IN LEAVING A LARGE QUANTITY OF CRUDE OIL ON ITS SIDE TRACKS.

   A railroad company permitting crude oil to accumulate in large quantities and remain for an unreasonable time upon its side tracks, where brakemen are accustomed to go in coupling and uncoupling cars, and whereby such work is made dangerous, is guilty of negligence, and answerable therefor in damages to a brakeman who, while in the performance of his duty slips upon such oil and is injured.

2. THE COMPANY OWNING SUCH SIDE TRACK IS LIABLE FOR INJURIES RECEIVED BY AN EMPLOYEE IN DISCHARGING HIS DUTIES.

   Such tracks being used to transfer cars from another railroad to defendant's railroad in pursuance of a traffic arrangement between the companies owning such roads, the owner of such transfer tracks is liable for such negligence resulting in an injury to a brakeman not in its employ, but in the employ of such other company, if at the time he receives such injury he, in the discharging of his duty, is assisting in such transfer of cars.

3. ADMISSION OF TESTIMONY IMPROPERLY ADMITTED OVER THE OBJECTION OF THE OTHER PARTY, EFFECT.

   When upon a trial, testimony is improperly admitted over the objection of a party, and the jury is subsequently instructed to disregard such testimony, the judgment will not be reversed on account of the error committed in admitting such testimony, when it is not evident that the jury failed to follow the instruction given to disregard it, or it does not otherwise appear that prejudice resulted therefrom to the party complaining.

ERROR to the Court of Common Pleas of Lucas county.

PARKER, J. (Orally.)

This action is brought to reverse the judgment of the court of common pleas in an action wherein Henry Criss was plaintiff and the Cincinnati, Hamilton & Dayton Railway Co. was defendant, brought by the plaintiff below for damages for personal injuries sustained by him in consequence of alleged negligence upon the part of the railway company. The case went to trial, and resulted in a verdict of $7,500 in favor of the plaintiff below. Various exceptions were taken during the course of the trial, which appear in the bill of exceptions, which is a part of the record here. A motion for a new trial was made, on the grounds, (1) that there was error in the admission of evidence on behalf of the plaintiff below, which was objected to by the plaintiff in error. (2) That the verdict was not sustained by sufficient evidence. (3) That the verdict was against the weight of the evidence. (4) That the verdict was contrary to law and the evidence. (5) That the damages awarded were excessive. (6) For errors of law occurring upon the trial. This motion was overruled, and judgment entered on the verdict.

A succinct statement of the cause of action stated in the petition is found in the brief filed here on behalf of the plaintiff in error, and I will read from that:

"May 8, 1895, Henry Criss filed his petition against the defendant in which he alleges in substance as follows: That the defendant is, and for a long time has been, maintaining, in connection with its railway, certain yards containing numerous side tracks for the use of cars operated on said line of railway; that one of said tracks, known as No. 8, was used by the defendant for the purpose of receiving and standing cars thereon, which had been received from the Lake Shore & Michigan Southern Railway Co.; that it was usual and customary for said Lake Shore company to deliver to said defendant on said track; that on the 10th day of April, 1895, the plaintiff was in the employ of the said The Lake Shore & Michigan Southern Railway Co. as a brakeman; that about 3 o'clock in the morning of said day, while it was dark, it became the duty of the plaintiff, in connection with other employes, to switch three cars from the tracks of the Lake Shore company and to place the same on said track No. 8 for the defendant; that when these cars came to the vicinity of said track it was found that the same was almost filled with cars, and plaintiff was ordered by his conductor to go along said track and make room for said additional car; that plaintiff did find room on said track for these cars, but that it was necessary to couple together the cars already standing thereon; that while plaintiff was attempting to couple said cars he stepped upon a quantity of oil negligently permitted to accumulate and remain upon said track, lost his balance, and in attempting to save himself from falling, his left hand got between the draw bars, and so injured that it became necessary to amputate the same at the wrist. He therefore asks damages."

To the petition an answer was filed, which is in form a general denial of all the allegations except that respecting the railway company being a corporation duly incorporated, etc. The answer contains this averment also:

"The damage complained of in plaintiff's said petition was caused and occasioned by the carelessness and negligence of said plaintiff, and the negligence and carelessness of said plaintiff then and there directly contributed to the damage complained of in said petition."

Upon the trial, however, most of the facts controverted by this answer were admitted or conceded, or were established beyond controversy by the proofs. The real questions of fact which were controverted, were first as to the manner in which the accident happened, and second as to whether there was an accumulation of oil upon the track, as alleged in the petition; it being contended by the defendant below—that instead of the plaintiff slipping upon the oil as he went between the cars to couple them, he undertook to couple the cars, and did not give himself sufficient time to make the coupling, that he had sufficient time if he had taken it, but he waited until the cars came too closely together, then attempted to change a link from one car to another and make the coupling, and in consequence of his time being too short for that operation his hand was caught and crushed, so that its amputation was made necessary. It is claimed that something of this kind was admitted by the plaintiff to a witness when he (the plaintiff) was being conveyed from a place near where the accident occurred to the city hospital. The plaintiff, however, on the witness stand denied that he had ever made such statement or admission.

I will consider first the exceptions noted as to the admission of evidence upon the trial of the case. Upon page 11 of the bill of exceptions appear the following questions and answers: The plaintiff is testifying in his own behalf:

Q. "What wages were you receiving at the time you lost your hand?" A. "Well, I think it was $2.50 a night for ten hours."

Q. "Tell what the opportunity was, if any, for promotion to a steady job from the work you were doing at that time."

Objected to by counsel for defendant, and objection sustained. Further down the page:

Q. "Now I will ask you what was the custom of the Lake Shore Company, if you know, with reference to giving a man who was working in the position you were a better position or steady work." (Objected to by counsel for defendant, objection overruled, to which defendant, by counsel, duly excepted.) A. "If you understand the work they will give you a better position."

Q. "What is the custom with reference to the length of time a man is required to continue working in the position such as you were before being advanced to steady work?" (Objected to by counsel for defendant; overruled; defendant excepted.) A. "Well, if you understand the work they would give—put you up."

Q. "How long would you have to be employed as an extra, ordinarily, under the custom to get steady work?" A. "He could learn in about a year—he would know all about it."

Q. "Was there any custom about giving an extra man the preference in hiring men to do steady work over men who had not worked as extra?" (Objected to; overruled; defendant excepted.) A. "They would give it to the oldest man."

Q. "Make that plain, now, just what the custom was, and who they would give steady work to and how that was done." (Objected to, overruled; defendant excepted.) A. "You would go in your turn; there was several extra men."

Q. "The oldest extra man would come in for the steady job first under the custom." (Objected to; overruled; defendant excepted.) A. "Yes, sir."

Q. "What do you say about a man having to work as extra or not under the custom on that road at that time before he would receive such a steady job?" (Objected to; overruled; defendant excepted.) A. "It all depends on how many quit. If anybody quits, the next man takes his place."

It appears from the testimony of this witness that according to the custom he is undertaking to tell about, the chances of obtaining a better situation on the road did not amount to much more than a bare possibility. Under certain circumstances it would seem that certain men, with certain experience, after performing satisfactory work for the company, might be promoted, and might improve their conditions—might receive easier or more profitable employment. We are not prepared to say that testimony of that character may not be under some circumstances prejudicial and erroneous. We are unable to see, however, where the answers of the witness in this case with respect to the alleged custom of this railroad company could have in any way prejudiced the plaintiff in error. For that reason we hold that there was no error in the record with respect to them. No authority is cited upon either side on this proposition and we have not been able, in the time we have had to examine the case, to find any bearing directly upon it, therefore we do not undertake to lay down any rule on the subject, but simply say, that under the circumstances of this case, we cannot see that the answers were prejudicial.

Coming down to pages 79 and 80. Edward Criden was testifying as a witness on behalf of the plaintiff below. He testified that soon after the accident—the next morning, perhaps—he went along the track about where this accident is said to have occurred, and that he discovered oil upon the track at a certain point. He is asked this question:

Q. "Tell the jury if you noticed or looked to see whether there was any oil upon the track along about where the cross-mark appears?" A. "This exact spot?"

He refers to a cross-mark upon a certain photograph that was exhibited to him, there being other testimony tending to show that the accident occurred at the point indicated by the cross-mark made on the photograph.

Q. "Yes, about that place, as near as you can get it from this photograph." A. "There is oil in different spots all along that track."

A motion was made to rule this answer from the jury, which was overruled, and counsel for the defendant excepted. Counsel proceeds with the witness:

Q. "Just describe the oil as you saw it along the tracks—along on this track 8, about where that cross-mark appears—I mean as you observed it there the next day." A. "I don't know as I can say for sure that it was at that exact point or not."

Q. "Well, along at this place, and in the neighborhood of that cross-mark, right along there." (Objected to unless he can testify as to the condition of this track at the place where the accident happened.)

Q. "If you observed track No. 8, along in the neighborhood and at the place marked with a cross-mark, along about that locality, so as to be able to describe the condition of the tracks on the day that you were working there after Criss got hurt, please state what you saw there." (Objected to by defendant's counsel, unless the question is limited to the place where it is claimed this accident happened, which is indicated on

that photograph by a cross. Overruled; defendant excepted.) **A.** "It was spotted with oil on different parts of the track." (Motion made to strike out answer by defendant's counsel; overruled; defendant excepted.)

Q. "Confine your answer to the immediate neighborhood or at the place where the cross-mark appears, about that place—what you saw there, if anything, in the way of oil."

The same objection was made, and the court says:

"His attention is now called to a particular photograph, Exhibit B —if he noticed the condition and can say what the conditon of the track was there at the pont indicated in the photograph, or in the vicinity of it. He may testify to that. He is now testifying with reference to th s picture before him, and the mark that is indicated there." (Defendant by counsel duly excepted.)

MR. BRUMBACK—"Everything else may be stricken out except what he testifies to with reference to this place and the immediate vicinity."

MR. TYLER—"I made my objections, and the court had passed on them, and I have saved my exceptions."

MR. BRUMBACK—"I don't care if any testimony is ruled out, excepting the part inquired about, and the immediate vicinity of th s cross-mark; in other words, where the accident occurred. We don't know where the accident occurred, therefore we cannot restrict it to any definite place, only in the immediate vicinity of that cross-mark. I concede, perhaps, it is not proper testimony as to anywhere else—at least I don't want to take the chance of any error, and the court may rule out answers of the witness so far as any other place is concerned."

It will be observed also that in addition to this declaration upon the part of counsel for plaintiff that he claimed nothing from s ch testimony, that the questions of counsel to the witness were with reference to oil at or in the immediate vicinity of the place where the accident was said to have occurred; so that in so far as the answers told of oil at any other place, they were not responsive to the questions of counsel. Mr. Tyler, counsel for the defendant below, then remarks:

"Then my objection to all these answers should be sustained."

THE COURT:—"The testimony of this witness, then, that there was oil on that track in any place else except in the immediate vicinity of the cross-mark indicated on this picture will be excluded from the consideration of the jury, and you will not consider it, gentlemen, as evidence in this case as to the condition of that track."

So that it seems that at this point counsel for the defendant below requested that the court rule this testimony from the jury, and the court acting upon that as well as upon the suggestion of counsel for the plaintiff did so. It is urged, however, by counsel for plaintiff in error, that this testimony was prejudicial, and that the admission of it was error, and that the ruling of the court taking it from the jury on his motion and in accordance with the suggestion of counsel on the other side, did not cure the error; and he insists that the verdict should be set aside, notwithstanding that action of the court. In 16 O. S., 221, appears the case of *Thomas Mimms* v. *The State of Ohio*. This is said in the syllabus:

"Where the court improperly overruled the objection of the defendant to testimony offered on the trial by the state, the judgment against him will not be reversed for such erroneous ruling, when the court, on

motion of the defendant, excluded all the testimony so given from the consideration of the jury, and instructed them that it must be wholly disregarded.''

This was a murder case, in which the strictest rule ought to be observed by the court, and if there was any error that might be prejudicial—that might not be cured by taking the matter from the consideration of the jury—certainly careful consideration would be given to that suggestion, in a case where a man upon trial was in peril of his life. I will not stop to read from the opinion of the court upon the subject, but call attention to another case in which this question was before the supreme court of Ohio, found in 19 O. S., 596, the case of *Klein* v. *Thompson*. This was an action for damages on account of assault and battery. Nothing is said about the point in issue in the syllabus, but at page 571 this appears:

''Declarations of the defendant made subsequently to the assault and battery, and tending to show express malice in the defendant in inflicting the injury complained of, were also allowed, against the exception of the defendant, to go in evidence. But the court subsequently, during the progress of the trial, on discovering that the petition contained no averment of malice, ruled out the evidence, and instructed the jury to disregard it.''

Whether that was done upon the motion of either party does not appear.

''It is contended that the introduction of this evidence was error to the prejudice of the defendant, which was not cured by subsequent exclusion. In this state we do not regard the admission of improper evidence to the jury, which is afterward ruled out, as of itself constituting ground for reversal; though the question of its influence in producing a wrong verdict ought to be considered on a motion for a new trial.''

Citing the case of *Mimms* v. *The State*, 16 O. S., 221.

I recollect that there was an interesting case involving this question decided in the third circuit some years ago, I think in Auglaize county, but I have not been able to lay my hand upon the report. There the same claim was made by the plaintiff in error, that the prejudice was so great resulting from the admission of improper testimony, that the judgment ought to be reversed, notwithstanding the fact that the court attempted to disabuse the minds of the jury of the effect of it; and if I recollect the case correctly, the circuit court laid down the rule that it must clearly appear that the testimony must have had that effect upon the minds of the jury; that it will be presumed that the jury observed the instructions of the court to disregard the evidence which was ruled away from them; and that only in a case where the testimony was of such a character that it would appear to a reviewing court that it would be impossible for a court by any sort of an instruction, or for the jury by any kind of a resolution or effort, to eradicate the prejudicial impression from their minds, would a reviewing court be justified in reversing a judgment on account of such testimony. We do not think this testimony is at all of that character. There is some question as to whether it was of a character that required a ruling of the court to take it from the jury.

Upon page 94 is a question that I believe is not insisted upon in argument. The witness is asked this: ''Tell the jury whether you observed oil leaking at the place where you *understood* Mr. Criss got

hurt before he got hurt.'' That was objected to, and the objection overruled, and exception taken. The witness had testified to the means by which he had ascertained and identified the place of the accident so that the jury might have been allowed to consider his testimony, as to oil at the place he observed, and at the same time decide whether or not it was the place at which Criss was injured.

Those, I believe, are all of the exceptions to the admission of testimony. There were no exceptions taken to the charge of the court or to any action of the court with respect to the giving or refusing of charges requested.

That leaves then for further consideration the question whether the verdict is sustained by the evidence. Upon that I will say briefly, that we think that the facts alleged in the petition amount to negligence upon the part of the railroad company which would make it liable to this plaintiff below for any injury which he might have received in the line of his duty and while in the exercise of due care upon his part, he being an employe of another company; and we think that the facts alleged are fairly established by the evidence. It is also urged that the verdict is against the weight of the evidence. Without entering into a discussion of this evidence, or reciting what it is, I will say in brief that we have carefully considered this question, having gone through the bill of exceptions and read carefully the testimony of the witnesses and scrutinized it closely, and we cannot agree with this view of the matter. There are six witnesses on behalf of the plaintiff below, including himself, who testify positively to having seen this oil on the railroad track at or about the place where Criss was injured. Some of them appear to be entirely disinterested witnesses. Some of them say they saw oil in such quantities that they might have readily shoveled it up. They were unable to tell just what the depth of the oil was, and they might readily have been mistaken, and have overstated its depth, but making a fair allowance for that, we think it fairly appears from the testimony that there was such a quantity of oil there, and that it remained for such a length of time, that the railroad company was guilty of negligence in not removing it. On the other hand, there are four witnesses on behalf of the defendant below who undertook to testify as to the oil. They simply say that they saw no oil. Some of them could not and would not undertake to tell whether or not there was oil there, but they were in and about there under such circumstances that if there had been oil there they may have failed to have discovered it. They were not looking for nor thinking about oil; they were there for the purpose of examining cars, to see if there were any defects in them that might have resulted in this accident. Their attention was not drawn to the question whether there was or was not oil on the track. We think the verdict is not opposed to the weight of the evidence. It is also urged that the verdict is excessive in amount. We do not think so; we think it is warranted by the evidence.

*Swayne, Hayes & Tyler*, for Plaintiff in Error.

**Hurd, Brumback & Thatcher**, for Defendant in Error.